## GENERAL COURT, OCTOBER TERM, 1799.

### Boreing's Lessee *vs.* Singery.

E JECTMENT for a tract of land called *Boreing's Habitation Rock,* lying in Baltimore county. The defendant took defence on warrant for all that part of the said tract

---

of land, which is included within the lines of a tract of land called *Singery's Trouting Streams,* according to his location thereof on the plots returned in the cause.

## BILLS OF EXCEPTIONS.

1. The plaintiff at the trial, offered in evidence to the jury, a patent granted to *Ezekiel Boreing,* the lessor of the plaintiff, on the 24th of April 1795, for the tract of land called *Boreing's Habitation Rock,* for which this suit is brought, stated to have been surveyed for him on the 8th of October 1794, in virtue of two special warrants, one for 120 acres of land, dated the 30th of November 1793, and the other for 180 acres, dated the 10th of December 1793, and described as "lying in Baltimore county, beginning at two bounded white oaks, they being the beginning trees of a tract of land called *Singery's Trouting Streams,* and running thence bounding on the given line of *Singery's Trouting Streams* reversely, S. 6, W. 57 ps. to the last line of the said land, thence reversing said land and bounding thereon the four following courses," &c. &c. "to a stone set up in the ground marked with the letters C. S. the said stone being the beginning of a tract of land called *Bear's Rock,* thence" &c. &c. containing 300 acres more or less. Which said tract of land the plaintiff contended was truly located by him on the plots returned in the cause, as per table of courses No. 2.

The plaintiff also gave in evidence the original certificate of survey, and plot thereto annexed, returned into the land office, on which the grant of *Singery's Trouting Streams* was obtained, and the location of the tract of land therein mentioned by the name of *Petticoat's Loose;* and which the plaintiff contended was truly located by him, on the plots in this cause returned, as per table of courses No. 17.

The defendant produced and offered evidence to the jury, that the whole of the lands located on the plots returned in this cause, were reserve lands of the Lord *Proprietary,* under the direction and management of *William Smith,* deputy surveyor and agent of the said reserve lands on the part of the Proprietary; and that the said *Smith,* on behalf of the Proprietary, surveyed and laid off, on the 4th of February 1762, a part of the said reserve for a certain *Dorsey Petticoat,* called *Petticoat's Loose,* as by a certificate thereof, dated the 19th of May 1762, in which the said land is described as "beginning "at two bounded white oaks standing on the S. side of a "small branch which descends into George's Run, and "thence into the Great Falls of Gunpowder, and running "thence," &c. eighteen courses, "and thence with a "straight line to the beginning; containing and laid out

Oct. 1799.

Boreing
vs.
Singery.

"for 127 acres more or less," &c. Which said tract of land the defendant located on the plots in the cause from figures 21, and described by table of courses No. 12.

The defendant offered to prove by the chain-carrier who was present at the original survey of the said land, that the actual beginning thereof was at two bounded white oaks standing on the south side of George's Run, at the said figures 21; and offered to prove that the said land, by sundry assignments, came to the possession of him the defendant. That from the time of taking up the said land to the year 1775, he the defendant, and those under whom he claims, had entered on, improved, and built on the said land, and held the same under the name and description of *Petticoat's Loose*, and under the survey so made by the said *Smith* the deputy surveyor and agent of the Proprietary; that he the defendant also held and possessed one other survey within the reserves, called *Merryman's Mountain*, as located on the plots returned in this cause, per table of courses No. 4. That he the defendant did not hold, possess or claim, right to any other tract, parcel, or survey of land, within this state, called *Petticoat's Loose*, except the one located by him on the plots in this cause. And that he the defendant, so being in possession of the said parcels of land, according to his locations thereof on the plots as aforesaid, on the 30th of September 1770, by legal and competent authority caused a resurvey to be made of the said two parcels of land, and added contiguous vacancy, and a certificate thereof to be made and returned to the land office, by the name of *Singery's Trouting Streams*, wherein it is stated, that "by virtue of a general order from the right honourable the Lord *Proprietary*, his commissioners for the sale of his manors and reserved lands within the province of Maryland, to lay out parcels of his Lordship's reserved lands in Baltimore county, for persons applying for the same," &c. *James Calder*, deputy surveyor of the said county, certified that he had "surveyed and carefully laid out, for and in the name of *Christian Singery*, a tract or parcel of land, part of his Lordship's reserved lands in Baltimore county, including two tracts or parcels of land, viz. *Merryman's Mountain*, beginning at three bounded white oaks, (two of which proceeds from one root,) standing on the west side of George's Run which descends into the main falls of Gunpowder River, and running thence" &c. ten courses, "and then by a straight line to the beginning, containing and laid out for 83 acres." "*Petticoat's Loose*, beginning at two bounded white oaks standing on the south side of a small branch, which descends in to George's Run, and running thence," &c. seven courses, "and thence by

a straight line to the beginning, containing 91 1-2 acres. Beginning, for the *resurvey*, at two bounded white oaks standing between two barren hills at the end of the last line of *Merryman's Mountain*, and about west nine perches from George's Run, which descends into Gunpowder Falls; thence," &c. twelve courses, "to the beginning trees of *Petticoat's Loose*; then," &c. seven courses, "and thence by a straight line to the beginning, containing and laid out for 178 acres," &c. The said certificate was examined and passed, and the purchase money paid on the 19th of April 1775. The defendant also offered in evidence a grant for the said land, which issued to him on the said certificate on the 20th of April 1775, and which is located by him on the plots in this cause as per table of courses No. 5.

The defendant also offered evidence, that a tract of land called *Horatio's Lott*, located on the said plots, per table of courses No. 6, was surveyed on the 22d of June 1791, for *Mordecai Ford*, containing 314 1-4 acres, and patented to *Horatio Ford* on the 9th of January 1794, the certificate having been assigned to him; which said land is described as "lying in the reserve of the county of Baltimore, beginning at a bounded Spanish oak, and a bounded hickory standing on the east side of a small branch which descends into George's Run, a draught of the Great Falls of Gunpowder, and running," &c. the three last courses of which are, "until it intersects a tract of land called *Singery's Trouting Streams*; thence running with and bounding on said land S. 80 45 E. 225 perches, to a stone marked C. S. and thence with a straight line," &c.

The defendant further offered evidence, that at the time of the resurvey on the said land called *Merryman's Mountain* and *Petticoat's Loose*, the surveyor in making the said survey, did actually run to the two trees at the beginning of *Petticoat's Loose*, at figures 21 on the plots in this cause; and to prove that the land called *Petticoat's Loose*, called for in the grant of *Singery's Trouting Streams*, did begin at the said figures 21, the defendant further offered in evidence, that at the said figures 21 on the plots, there stood, at the time of making the survey of *Singery's Trouting Streams*, two white oak trees on the south side of a small branch which descends into George's Run, located on the plots; that the said white oaks were the beginning trees of a tract of land known in the neighbourhood by the name of *Petticoat's Loose*, and that no other land was known by that name.

The defendant also offered to prove the land as located by the plaintiff on the plots in this cause, and described in the table of courses No. 17, was not at the

time of making out the certificate of *Singery's Trouting Streams*, known by the name of *Petticoat's Loose*; and that the land located on the plots, and described in the table of courses No. 13, was part of the land called *Petticoat's Loose*, and is the same land described in the certificate of *Singery's Trouting Streams* by the name of *Petticoat's Loose*, as beginning at two white oak trees on the south side of a small branch which descends into a run called George's Run.

The defendant then offered to prove, by the chain carrier who carried the chain on making the survey called *Singery's Trouting Streams*, that the surveyor at the time of making the said survey on which the certificate for the said tract was returned, did run to two white oak trees on the south side of a branch which descends into a run called George's Run, located on the plots of figures 21; and also that the said two white oaks were the beginning trees of that tract called *Petticoat's Loose*, described in the certificate of *Singery's Trouting Streams*, which the defendant locates as per table of courses No. 13.

The plaintiff by his counsel objected to the evidence so offered by the defendant.

*Winchester*, for the defendant. The call in the grant of *Singery's Trouting Streams* is for the beginning trees of *Petticoat's Loose*, and whether or not the surveyor run to one or the other tracts, is a matter of fact for the jury. If the defendant proves to the jury an actual running to the trees located, he is not precluded from going to those trees, because the surveyor has erroneously described them to be the beginning trees of another tract; for that which is certain cannot be made uncertain by uncertain or untrue description.

CHASE, Ch. J. In the case of *Helm's Lessee vs Howard*, *(a)* the court decided, that if a certificate of survey called for a tree standing in line of another tract of land, and the tree can be proved, you may run to it, though it should appear that the tree does not stand in the line described; and to such a case the reasoning of the defendant's counsel applies. But in such a case as this, where the call is to trees as the beginning trees of another tract, you must not only prove them to be the trees called for, but the beginning or other trees of the land of which they are described to be boundaries.

THE COURT *(b)* are of opinion, that the defendant

*(a)* 2 *Harris and M'Henry's Rep.* 89.

*(b) Duvall*, J. concurring. *Done*, J. did not attend.

cannot give evidence to the jury, that the tract of land called *Singery's Trouting Streams* run to the said two white oak trees which are located on the plots at the figures 21. The defendant excepted.

2. The plaintiff, to make title to the land in the declaration of ejectment mentioned, having offered in evidence a grant for the said land as herein before mentioned, called *Boreing's Habitation Rock*, to *Ezekiel Boreing*, the lessor of the plaintiff, dated the 24th of April 1795, and surveyed on the 8th of October 1794, in virtue of two special warrants, one granted on the 30th of November 1793, and the other on the 10th of December 1793, the defendant offered in evidence from the records of the land office, that the certificate of survey on which the said grant issued, was compounded on the 10th of November 1794, and not before.

The defendant then prayed the opinion of the court, and their direction to the jury, that the said grant did not pass any legal title in the land in the declaration mentioned to the lessor of the plaintiff, in case the said certificate of survey was compounded on as aforesaid.

It is presumed that the objection taken to the grant arose under the act of April 1782. *ch.* 38, *s.* 2, which enacts that "all certificates returned upon warrants granted in virtue of the act of November session 1781, *ch.* 20, or hereafter to be granted, shall lie in the office *six months* after they shall be *compounded on,* after which times respectively grants may issue, without notice as required by the act of last session."

CHASE, Ch. J. The court are of opinion that the direction prayed by the defendant's counsel ought not to be given to the jury. The defendant excepted.

3. The defendant, by his counsel, produced in evidence, a grant under seal, which issued to him as herein before mentioned, for the land called *Singery's Trouting Streams*, and claimed and defended by him on the plots returned in this cause. The plaintiff, by his counsel, produced the original certificate out of the land office, and offered in evidence, and swore a witness to the jury to prove, that *James Calder* was surveyor of Baltimore county at the time when the original certificate was returned into the land office upon which the said patent was granted, and that the said certificate, on which the said patent issued, was not made out or signed by him, or his authority; that as the original certificate was entered upon his surveyor's books, it contained no call to the beginning of *Petticoat's Loose,* nor was there any such

call in the certificates as made out by him, or under his authority; that the certificate as made out by the said *Calder* to be returned to the land office, described the said land in the following manner, viz. "Beginning at two bounded white oaks standing between two barren hills at the end of the last line of a tract called *Merryman's Mountain*, (included,) and about west nine perches from George's Run, and running thence," &c. nineteen courses, without any calls; "and then with a straight line to the beginning, containing 178 acres," &c. as entered in his surveyor's books; and that he did examine the original certificate with the copy entered on his said books before he signed and delivered the original certificate for the said land called *Singery's Trouting Streams*; by which said evidence the plaintiff offered to prove to the jury, that the said certificate was a *forgery*, that the said grant for the said land could not operate to pass more land than was contained in the certificate made out by the said surveyor, and entered in his book as aforesaid.

The defendant then proved that no other certificate for *Singery's Trouting Streams* was ever returned to the land office, than the one herein first before mentioned, on which the said patent issued as aforesaid.

The defendant, by his counsel, objected to the plaintiff's giving the evidence aforesaid to the jury for the purposes aforesaid.

CHASE, Ch. J. The court are of opinion, that the evidence is legal and admissible to the jury. Fraud is examinable at law as well as in equity, and no inconvenience can arise from admitting the evidence. In either court it must be decided on the testimony of witnesses, and there can be no reason why the examination should not be made at law.

There was no exception taken to this opinion of the court.

*Verdict* and judgment for the plaintiff. The defendant appealed to the Court of Appeals.

THE COURT OF APPEALS [*(a)* *Mackall, Jones, Potts* and *Dennis*, J.] at November term 1802, *reversed* the judgment of the general court, viz. They disagreed with the general court in the opinion stated in the *first bill of exceptions*; but concurred with them in the opinion expressed in the *second bill of exceptions*, and awarded a *procedendo.*

*Martin*, (Attorney-General) and *Cooke*, for the plaintiff. *Key, Shaaff* and *Winchester*, for the defendant.

*(a) Rumsey* Ch. J. did not attend.